IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:24-CV-458-FL

| | | |
|---|---|---|
| ENVIRONMENTAL HYDROGEOLOGICAL CONSULTANTS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| NORTH AMERICAN RISK SERVICES, INC. and RANDY SCROGGS, | ) ) ) | |
| Defendants. | ) | |

This matter is before the court upon defendants' motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) (DE 12). The motion has been briefed fully, and in this posture the

issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff initiated this case in state court April 29, 2024, subsequently removed to this court

June 5, 2024. Plaintiff asserts a single claim for negligent misrepresentation regarding assurances

allegedly made on which plaintiff relied to remediate hog waste spillage. Plaintiff seeks

compensatory damages, costs, and interest. Defendants filed the instant joint motion to dismiss

the complaint July 3, 2024, for failure to state a claim.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Plaintiff offers environmental consulting

and management services, including 24-hour environmental emergency response. Defendant

North American Risk Services ("NARS") served during the relevant time period as third-party

claims administrator for Admiral Insurance Company ("Admiral Insurance"), an insurer authorized to issue policies in North Carolina.[1]  Defendant Randy Scroggs ("Scroggs") worked as a complex litigation adjustor for NARS.

Admiral Insurance issued to Legacy Biogas, operator of a methane gas facility in North Carolina, a liability policy effective March 29, 2019, renewed for consecutive policy periods up to and through March 29, 2023.  The policy provided coverage for specified cleanup costs and liability claims.  Legacy Biogas's methane facility uses an anaerobic digestion system, in which bacteria break down hog waste to produce biogas, which functions much like natural gas.

On June 1, 2022, Todd Balance, managing member of Legacy Biogas reported an active, substantial leak to the North Carolina Division of Water Quality ("NC DWQ").  Representative(s) of NC DWQ traveled to Legacy Biogas's facility and provided for purposes of remediation plaintiff's information.  Todd Balance contacted plaintiff and requested help.  He also asked plaintiff to wait until Legacy Biogas received approval from its insurer, Admiral Insurance.

Another member of Legacy Biogas, Deborah Balance, submitted immediately an incident report to a claims manager identified as Berkley Custom Insurance Managers, acting for Freburg Environmental Insurance, the apparent underwriter.  Berkley Custom Insurance Managers additionally forwarded Deborah Balance's report to a manager for NARS June 1, 2022, who in turn forwarded the report to Scroggs, with direction from the underwriter's claims manager that he contact Legacy Biogas the same day.

Defendant Scroggs contacted Deborah Balance June 1, 2022, by e-mail, after failing to reach her by telephone, to advise he had been assigned to address the claim, and that he wished to

---

[1]     Under state law, a "third party administrator" can function as an insurance adjuster.  The parties treat this term as synonymous with "adjuster" throughout their briefing.  N.C. Gen. Stat. § 58-56-2(5); (Def's Br. (DE 13) 10–12; Pl's Br. (DE 14) 10–12).

make further contact to discuss the claims process and arrange for on-site inspection, if needed. Defendant Scroggs stated by e-mail that he would "work with [Legacy Biogas] to promptly and fairly resolve [its] claim." (Compl. (DE 1) ¶¶ 27–28 (alterations in original)).

Around 30 minutes after dispatch of the e-mail transmittal, Deborah Balance called Scroggs, who advised that Admiral Insurance would pay the cleanup costs. At that time, Scroggs knew Todd Balance and Deborah Balance needed contractors to assist with cleanup, and intended his representation to influence contractors to work with them. Todd Balance called plaintiff back and advised that Admiral Insurance had approved its services. Legacy Biogas, through Todd Balance, contracted with plaintiff for environmental cleanup services.

Plaintiff undertook a vigorous cleanup campaign, working 24 hours per day for two weeks and then 12 hour days for another week and a half. On June 6, 2022, Todd Balance engaged in limited discussion with defendant Scroggs. On June 7, 2022, Jamie Jackson ("Jackson"), on behalf of plaintiff, contacted defendant Scroggs concerning payment for work done to date. Scroggs made no mention orally to Todd Balance or Jackson that the claim was subject to a coverage determination, nor did he mention the fact plaintiff might not be paid for its work in subsequent letter to Jackson. Defendant Scroggs wrote a letter June 8, 2022, without reservation of rights, to Deborah Balance stating Admiral Insurance would pay cleanup costs in excess of the policy's self-insured retention of $10,000.00.

Plaintiff invoiced Legacy Biogas June 14, 2022, for services rendered up to and through June 12, 2022, in the amount of $325,260.32. The next day Jackson forwarded the invoice to defendant Scroggs by e-mail, and also to an individual, George Tyers ("Tyers"), working with a company called Roux, Inc., the involvement of which is unclear from the face of the complaint though it appears Roux, Inc. had some responsibility to review the invoice on behalf of defendants.

Five days later, on June 20, 2022, Jackson inquired of Scroggs and Tyers regarding payment, having received no response to his June 15, 2022 transmittal. Defendant Scroggs responded that date that Roux had not finished its review. On June 27, 2022, plaintiff invoiced Legacy Biogas for services rendered from June 13, 2022, through June 25, 2022, in the amount of $86,663.36.

Jackson contacted defendant Scroggs also on June 27, 2022, regarding payment. Defendant Scroggs referred Jackson to Legacy Biogas if payment then was required where defendant NARS still was reviewing for coverage. By then, plaintiff's work was finished. Admiral Insurance ultimately let the claim languish for more than 18 months before it sued Legacy Biogas for declaratory judgment of non-coverage, on grounds that the incident did not occur on covered property.[2] Plaintiff is also a party to that suit. On July 18, 2024, default was entered against Legacy Biogas.

## COURT'S DISCUSSION

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[3] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

---

[2]     This separate action is also pending before the undersigned under case number 5:24-cv-94.

[3]     Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.      Analysis

Defendants argue for dismissal on several grounds, including that they, as independent adjusters, owed no duty to claimants who are not the insured, such as plaintiff here. The court concludes that defendants' contention on this point is meritorious and so does not reach defendants' other arguments for dismissal.

Under North Carolina law, the elements of negligent misrepresentation are the plaintiff's 1) justifiable reliance 2) to his or her detriment 3) on information prepared without reasonable care 4) by one who owed the relying party a duty of care. Dallaire v. Bank of Am., N.A., 367 N.C. 363, 369 (2014).

As noted, defendants challenge the final element of the existence of a duty of care. The North Carolina Supreme Court has not applied this element in the context of an independent insurance adjuster sued by a claimant who is not an insured under the applicable policy. Nevertheless, it has expressed its disapproval for creating "conflicting duties of care," citing this very scenario as an example. Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Human Servs., 383 N.C. 31, 67 (2022). In Cedarbrook, the court cited Koch v. Bell, Lewis & Assocs., 176 N.C. App. 736, 740 (2006) as a case in which the North Carolina Court of Appeals "decline[d] to recognize the existence of a duty between an insurance adjuster and a claimant on the grounds that the recognition of such a duty would subject the adjuster to conflicting loyalties given that the adjustor owes a duty to the insurer who engaged him, so that the creation of a new duty to the claimant would conflict with that duty, and interfere with its faithful performance." Cedarbrook, 383 N.C. at 67.

5

In <u>Koch</u>, non-insured claimants sued an independent insurance adjuster for negligence over the allegedly improper installation of stucco to the exterior of a home. <u>See</u> 176 N.C. App. at 737–38. The North Carolina Court of Appeals noted that the existence of a duty of care under these circumstances presented a question of first impression under North Carolina law, and so engaged in thorough discussion, accompanied by a meticulous canvassing of authority from other jurisdictions. <u>Id.</u> at 739–41. On this basis, the court concluded that an independent insurance adjuster owes <u>no</u> duty of care to a non-insured claimant, among other reasons because recognition would subject an adjuster to directly conflicting legal duties. <u>Id.</u> at 739–40. <u>Koch</u> therefore is directly on point: here, plaintiff's claim is based on a supposed duty of care owed by defendants, an independent insurance adjuster and its employee, to a claimant which was not the insured. (<u>See</u> Compl. ¶¶ 6, 10–12). <u>Koch</u> makes clear that no such duty exists. <u>See</u> <u>Koch</u>, 176 N.C. App. at 739.

<u>Koch</u> also discussed how the relationship between an insurer and its independent adjuster risks the conflicting duties, for which <u>Cedarbrook</u> later expressed condemnation. Because the adjuster is subject to at least some degree of control by the insurer through contract, and because relations between insurers and insureds are often adversarial, recognizing a duty from an adjuster to an insured would be problematic, and a duty to a non-insured claimant would be even worse because of the claimant's "attenuation" from the insurance relationship. <u>See</u> <u>Koch</u>, 176 N.C. App. at 739–40. Plaintiff therefore does not, and indeed cannot, allege facts establishing a duty of care between an adjuster and a non-insured claimant because this relationship would create directly clashing duties of care, which <u>Koch</u> compared to an attorney attempting to represent both sides in litigation. <u>See</u> <u>Cedarbrook</u>, 383 N.C. at 67; <u>Koch</u>, 176 N.C. App. at 739–40.

6

Moreover, Cedarbrook recognized Koch, and its citations to appellate courts from other states, approvingly for the statement that recognizing "conflicting duties of care is inherently problematic."  See Cedarbrook, 383 N.C. at 67 (quoting Koch, 176 N.C. App. at 740); see also, e.g., Charleston Dry Cleaners & Laundry, Inc v. Zurich Am. Ins. Co., 355 S.C. 614, 619 (2003); Sanchez v. Lindsey Morden Claims Servs., Inc., 72 Cal. App. 4th 249, 253 (1999).  Accordingly, the holding in Koch is strongly persuasive.

Plaintiff resists reliance upon Koch for several reasons.  None is availing.  First, plaintiff places weight on the fact that Koch dealt with a claim for simple negligence, not a claim for negligent misrepresentation.  This distinction makes no difference.  Both torts require a duty of care owed by the defendant to the plaintiff.  Dallaire, 367 N.C. at 369 (negligent misrepresentation); Keith v. Health-Pro Home Care Servs., Inc., 381 N.C. 442, 450 (2022) (ordinary negligence).  Koch held that an independent insurance adjuster owes no duty to a non-insured claimant, and discussed this principle with general references to "duties"; this conclusion on a lack of duty defeats an essential element of both ordinary negligence and negligent misrepresentation.

Second, plaintiff notes that some courts, including this one, have declined to apply Koch in the way defendants advocate.  But these cases differed in a crucial respect: in each, the claimant was also the insured.  Indeed, plaintiff's cases, and others that have distinguished Koch, have expressly noted this key caveat to Koch's reasoning and conclusion.  See Duck Village Outfitters v. Nationwide Mut. Ins. Co., No. 2:14-cv-60-FL, 2015 WL 540149, at *4 (E.D.N.C. Feb. 10, 2015) ("Koch's . . . holding addresses the duty . . . owe[d] to an uninsured only.  Here, the question presented is whether an employee adjuster owes a duty to the insured plaintiff." (emphasis added)); Rouse v. State Farm Mut. Auto. Ins. Co., No. 1:14-cv-690, 2015 WL 3849648, at *3 (M.D.N.C.

June 22, 2015) ("Unlike the plaintiffs in the cases cited [including <u>Koch</u>], [plaintiff] is an insured individual bringing an action against his own insurance company and claims adjuster."); <u>New Jerusalem Rebirth & Restoration Ministries, Inc. v. Meyer</u>, No. 1:11cv312, 2012 WL 2704251, at *5 n.4 (W.D.N.C. July 6, 2012) ("By contrast . . . plaintiff is the insured and thus stands in privity with the defendants. The reasoning of <u>Koch</u>, then, is simply not applicable on the facts of this case."); <u>see also</u> <u>Lodholtz v. York Risk Servs. Grp., Inc.</u>, 778 F.3d 635, 641 nn.10, 11 (7th Cir. 2015) (conducting extensive canvassing of numerous state cases from across the country, including <u>Koch</u>, and concluding that <u>Koch</u> embodied a national majority rule). Plaintiff here is not the insured, and so <u>Koch</u> applies with full force.

Finally, plaintiff asserts an argument rooted in policy and equity, that <u>Koch</u>'s rule should not apply here because its roots lie in concerns about double recovery. But plaintiff's only authority for this position is a single unpublished case from a district court within the Third Circuit, and it points to no "persuasive data" that the North Carolina Supreme Court would set forth a rule contrary to the holding in <u>Koch</u>. <u>Town of Nags Head v. Toloczko</u>, 728 F.3d 391, 398 (4th Cir. 2013). These policy concerns may or may not have merit, but in any case they can be addressed only by the North Carolina General Assembly and state courts, not by this court sitting in diversity. "It is not the place of a federal court sitting in diversity to . . . exten[d] state common law . . . [or to] create or expand a state's public policy." <u>Time Warner Entertainment-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.</u>, 506 F.3d 304, 314 (4th Cir. 2007).

<u>Koch</u> announces a general rule that an independent insurance adjuster owes no duty to a non-insured claimant; plaintiff here is a non-insured claimant attempting to press a tort claim requiring a duty against an independent insurance adjuster. Plaintiff's claim falls squarely within the ambit of <u>Koch</u> and must be dismissed.

8

**CONCLUSION**

Based on the foregoing, defendants' motion to dismiss (DE 12) is GRANTED. Plaintiff's claim is dismissed for failure to state a claim under Rule 12(b)(6). The clerk is DIRECTED to close this case.

SO ORDERED, this the 17th day of March, 2024.

LOUISE W. FLANAGAN
United States District Judge